**In re Freddie H. SEWELL; Donna D. Sewell, Debtors.**

**Freddie H. Sewell; Donna D. Sewell, Appellants,**

**v.**

**MGF Funding, Inc.; Marken Ventures, LLC; 42 Development Group; Russell A. Brown, Trustee, Appellees.**

**BAP No. AZ–05–1176–MOSC.**
**Bankruptcy No. 04–20591–RTB.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 20, 2006. at Phoenix, Arizona.

Filed—May 26, 2006.

Amended and Ordered Published— June 21, 2006.

Freddie H. Sewell, Scottsdale, AZ, Pro Se.

Donna D. Sewell, Scottsdale, AZ, Pro Se.

Russell A. Brown, Phoenix, AZ, trustee.

Before: MONTALI, SMITH and CARROLL,[1] Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

An order reinstating this previously-dismissed Chapter 13[2] case was signed before but entered after completion of a foreclosure sale. The bankruptcy court held that the reinstatement was not effective until the order was entered. We AFFIRM.

## I. FACTS

Debtors filed their voluntary Chapter 13 petition on November 29, 2004, the day

---

**1.** Hon. Peter H. Carroll, Bankruptcy Judge for the Central District of California, sitting by designation.

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23, because the case from which this appeal arises was filed before that effective date (generally October 17, 2005).

before a scheduled foreclosure sale of their home by secured creditor Mountainview Lending, LLC ("Lender"). They did not file the required documents and their case was dismissed on January 5, 2005. On January 11, 2005, they filed the missing documents—bankruptcy schedules and a Chapter 13 plan—together with a motion to reinstate their case. Debtors did not serve a copy of the reinstatement motion on Lender by mail, although Lender may have received a notice of electronic court filing ("ECF") from the court.

On January 13, 2005, a trustee's sale was conducted but not completed because under Arizona law a foreclosure sale is not complete until, at the earliest, the time the consideration is paid.[3] Next, as stated in a minute order of the bankruptcy court:

> On January 14, 2005, several critical events occurred, namely: (1) the court noticed a hearing on the motion to reinstate for January 18th [and Lender received electronic notice of that hearing at 9:47 a.m.], (2) at about 1 P.M. the court signed[4] an order reinstating the case notwithstanding the January 18th hearing because the debtors orally notified the court that a trustee's sale was pending on their residence [the "Reinstatement Order"], (3) at about 3 P.M. [the purchaser] paid the trustee the bid price and shortly thereafter the trustee recorded the trustee's deed, and (4) at about 4 P.M. the [Reinstatement Order] was docketed by the clerk.

Minute Order, March 30, 2005.

The Reinstatement Order states, "IT IS HEREBY ORDERED reinstating [sic]

case number 04–20591–PHX–RTB and setting aside the dismissal in this matter." The order contains no other language indicating whether the case is reinstated as of the time the order was signed or when it was entered on the docket.

Debtors filed a motion to set aside the sale of real property (the "Set Aside Motion"). The purchasers of the home filed a Motion for Relief from the Automatic Stay and Validating Trustee's Sale (the "Stay Relief Motion"). The purchasers are MGF Funding, Inc. ("MGF") and Marken Ventures LLC ("Marken"), and the entity to which they later conveyed the home, 42 Development Group, LLC (collectively "Purchasers").

Debtors' Set Aside Motion argues that just as the automatic stay is effective immediately upon submission of a bankruptcy petition to the clerk, not at the later time the petition is docketed or that creditors receive notice of the bankruptcy case, similarly an order reinstating a bankruptcy case should restore the automatic stay as of the time the order is signed, not at the later time it is entered on the docket. Alternatively, the Set Aside Motion argues that by its terms the Reinstatement Order set aside the dismissal and that must mean that the effects of the dismissal were also set aside, as if the automatic stay had never terminated. Debtors propose to sell the home to a related party and they allege that such a sale would generate substantial proceeds for general unsecured creditors, as well as for Debtors' homestead exemption.

After hearings and supplemental briefing, the bankruptcy court issued a minute

---

**3.** A.R.S. § 33–810(A); *In re Benson,* 293 B.R. 234, 237 (Bankr.D.Ariz.2003).

**4.** The order was signed electronically. Debtors' counsel and the bankruptcy court apparently were able to verify the time of signing from the court's computer personnel. Apart from verifying the time of signing, it makes no difference for purposes of this appeal that the order was signed and docketed electronically rather than manually.

order concluding as an initial matter that the effective date and time of an order reinstating a dismissed bankruptcy case is a matter for its discretion:

> Surprisingly the rules are not absolutely clear as to when an order reinstating a dismissed case becomes effective. The rules are clear that a judgment is effective when it is docketed by the clerk. See: Fed.R.Civ.P. 58, Bankr.Rules 5003 and 9021.[5] Both the Federal Rules of Civil Procedure and the Bankruptcy Rules make multiple references to "judgments" and "orders" strongly implying that judgments and orders are treated differently under both rules. These rules do not say that all orders are not effective until they are docketed by the clerk. *Noli [v. C.I.R.,* 860 F.2d 1521, 1525 (9th Cir.1988) ] provides that some orders are effective without being signed or docketed.

Minute Order, March 30, 2005.

The bankruptcy court then reviewed the equities in favor and against imposing the automatic stay as of the time the Reinstatement Order was signed and concluded that it was not effective until it was entered on the docket, based primarily on lack of notice to the affected parties:

> ... the court finds that no one could find the ECF [R]einstatement [O]rder of January 14th until that order was entered on the court's docket. It would be poor public policy to hold that parties are bound by orders where they have no notice or knowledge of such orders, and particularly where they have no ability to ascertain the existence of orders from the public record. There was no way for the [a]ffected creditors, trustee and high bidder to know that the [R]einstatement [O]rder had been signed until it was entered in the court's docket. Although not raised by the parties, the court also doubts the constitutional validity of a finding that the order was effective when signed where the [a]ffected parties lacked any notice or knowledge thereof and lacked any way to find such order in the public record: such result seems to lack fundamental due process of law.

Minute Order, March 30, 2005.

Consistent with this ruling, the bankruptcy court entered an order (a) granting Purchasers' Stay Relief Motion and (b) denying Debtors' Set Aside Motion (the "Foreclosure Validation Order"). Debtors filed a timely notice of appeal.[6] Debtors did not name Lender as an appellee, nor

---

**5.** Rule 9021 provides in part that a "judgment is effective when entered as provided in Rule 5003." Fed. R. Bankr.P. 9021. Rule 9021 also incorporates Fed.R.Civ.P. 58 (procedures governing entry of judgment). The Rules define a "judgment" as any appealable order. *See* Fed. R. Bankr.P. 9001(7), 9002(5).

**6.** Debtors did not obtain a stay of the Foreclosure Validation Order and their home has been sold and resold to Purchasers. Ordinarily such facts might render this appeal moot. *See In re Onouli–Kona Land Co.,* 846 F.2d 1170, 1171 (9th Cir.1988) ("Bankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets. Whether an order directly approves the sale or simply

lifts the automatic stay, the mootness rule dictates that the appellant's failure to obtain a stay moots the appeal." (citation omitted)). In this case, however, the issue is not so much whether there was cause to grant relief from the automatic stay but whether the stay applied at all, and if it did then the sale was not simply voidable but was void. Presumably no amount of selling or reselling would cure such voidness. *See generally In re Schwartz,* 954 F.2d 569 (9th Cir.1992) (actions taken in violation of automatic stay are void, not merely voidable). Therefore, particularly in the absence of any briefing on this issue by the parties, we are not prepared to dismiss this appeal as moot.

was Lender served with the notice of appeal.[7]

## II. ISSUES

A. Was it within the bankruptcy court's discretion to determine when Debtors' case was reinstated and the automatic stay was reimposed?

B. If so, did the bankruptcy court abuse its discretion?

## III. STANDARD OF REVIEW

■ The briefs on this appeal do not address the standard of review. "We review the bankruptcy court's conclusions of law and questions of statutory interpretation de novo, and factual findings for clear error." *In re Baldwin Builders*, 232 B.R. 406, 410 (9th Cir. BAP 1999) (citation omitted).

Debtors appear to argue that the issues on this appeal are purely matters of law, as to which the bankruptcy court had no discretion. Their primary theory seems to be that all reinstatement orders must be immediately effective when signed, in order to be consistent with the immediate effects of presenting a bankruptcy petition for filing. Alternatively they argue that regardless of when a case is reinstated the very act of setting aside a dismissal necessarily eviscerates all effects of the dismissal as a matter of law, as if the automatic stay never terminated. We reject these arguments in the Discussion section below and we hold that the bankruptcy court had discretion when to reinstate the case and when to reimpose the automatic stay. Therefore, the Foreclosure Validation Or-

der must be reviewed under the abuse of discretion standard.

■ The Foreclosure Validation Order appears to be a clarification of an ambiguity in the Reinstatement Order, but to the extent it was a reconsideration we also review the decision to reconsider for an abuse of discretion. *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir.2004) (grant or denial of motion under Fed.R.Civ.P. 60(b) reviewed for abuse of discretion); *In re Kaypro*, 218 F.3d 1070, 1073 and 1077 (9th Cir.2000) (grant of new trial reviewed for abuse of discretion).

■ To the extent, if any, that the bankruptcy court annulled the automatic stay that decision also would be reviewed for an abuse of discretion. *In re Fjeldsted*, 293 B.R. 12, 18 (9th Cir. BAP 2003). The bankruptcy court might not have intended to annul the automatic stay because it reasoned that the stay did not exist when the foreclosure sale was completed. Nevertheless, the relief requested in the Stay Relief Motion was to annul the automatic stay and the Foreclosure Validation Order granted that motion so this might have been an alternative basis for the Foreclosure Validation Order.

■ For all of these reasons, we review the Foreclosure Validation Order for an abuse of discretion. We find an abuse of discretion if we have a "definite and firm conviction" that the bankruptcy court committed a clear error of judgment in the conclusion it reached. A bankruptcy court also necessarily abuses its discretion if it bases its ruling on an erroneous view of

---

7. Lender might be prejudiced if we were to reverse. Therefore, if we were inclined to reverse we might require Debtors to take steps to join Lender in this appeal so that it could defend the Foreclosure Validation Order. Because we affirm we do not take that

approach. *See Interstate Oil Co. v. Gormley*, 105 F.2d 431, 432 (9th Cir.1939) (after notice of appeal is filed, permission to join necessary appellee is discretionary and "should not be granted unless there is merit in the contentions of the appellants").

the law. *In re Beatty*, 162 B.R. 853, 855 (9th Cir. BAP 1994).

## IV. DISCUSSION

A. *The Bankruptcy Court had Discretion to Determine Whether the Reinstatement Order Was Effective When Signed or When Entered*

■ Dismissal of a bankruptcy case generally terminates the automatic stay. 11 U.S.C. §§ 349(b)(3), 362(c). *But see In re Krueger*, 88 B.R. 238, 240–42 (9th Cir. BAP 1988) (order dismissing case was void for lack of due process, so automatic stay was continuously in effect and foreclosure sale was void).

■ Reinstatement of a case restores the automatic stay. Most reported decisions reimpose the automatic stay only prospectively. *See, e.g., In re Lomagno*, 320 B.R. 473, 479–82 (1st Cir. BAP) (reversal of dismissal order did not retroactively reimpose automatic stay), *aff'd*, 429 F.3d 16 (1st Cir.2005). We are not aware of any previous case in which it made a difference whether the automatic stay was reimposed when the reinstatement order was signed or when it was entered.

Debtors argue that the bankruptcy court erred in determining that the Reinstatement Order was effective when entered, instead of when signed. Debtors analogize to a bankruptcy petition. They point out that creditors typically receive no advance notice of the petition and yet the automatic stay arises under Section 362(a) at the moment when it is given to the court clerk for filing, not at the later time when it is entered on the docket. *In re Godfrey*, 102 B.R. 769, 771 (9th Cir. BAP 1989). Despite this lack of notice to creditors, actions taken in violation of the automatic stay are void. *Schwartz*, 954 F.2d 569. Debtors are also correct that the Ninth Circuit has held for policy reasons that

certain orders are effective when signed, not when entered. *In re San Joaquin Roast Beef*, 7 F.3d 1413, 1416–17 (9th Cir. 1993). These arguments persuade us that in general a bankruptcy court *can* reinstate a case and reimpose the automatic stay as of the time it signs a reinstatement order, subject to review for abuse of discretion. That does not mean that a bankruptcy court is *required* to do so.

■ There are differences between filing a new bankruptcy petition and reinstating a prior bankruptcy case and there are valid reasons for choosing between them. There may be disadvantages to filing a petition, or a debtor may be ineligible. *See, e.g.,* 11 U.S.C. § 109(g). For whatever reason, Debtors chose to file a motion to reinstate their dismissed case instead of a new petition. The bankruptcy court then had to determine whether and when to reinstate the case. We see no reason why the bankruptcy court could not defer reimposing the automatic stay in fairness to other parties in interest, just as the bankruptcy court has broad discretion whether to grant relief from the automatic stay retroactively, prospectively, or as of a future date and time. *See generally Fjeldsted*, 293 B.R. at 21 (noting bankruptcy courts' broad discretion in crafting relief from automatic stay). To hold otherwise would promote form over substance in cases such as this. Purchasers' Stay Relief Motion asked the bankruptcy court to annul the automatic stay and there is no question that such relief is a matter for the bankruptcy court's discretion. *Id.*

Debtors argue in the alternative that the Reinstatement Order by its terms "set[ ] aside" the dismissal, that this means the dismissal order was vacated, and the bankruptcy court erred by ruling otherwise. Debtors cite authority that "when an order of dismissal is vacated, all of its effects are vacated, including the termination of the

automatic stay" and this "restores the stay as if had not been terminated at all ...." *In re Hakim,* 244 B.R. 820, 821–22 (Bankr. N.D.Cal.1999). *Contra In re Nagel,* 245 B.R. 657, 662 (D.Ariz.1999) (retroactive reinstatement of Chapter 11 case was "a kind of judicial time travel that cannot be reconciled with the law").

We are not convinced. The Reinstatement Order did "set aside" the dismissal but this may imply only prospective relief. To vacate all of the effects of a dismissal order retroactively could have far ranging, unintended consequences. *See In re Aheong,* 276 B.R. 233, 243 n. 10 (9th Cir. BAP 2002). The Reinstatement Order says nothing about retroactively imposing the automatic stay and doing so would void not only the foreclosure sale but possibly other events that we and the bankruptcy court know nothing about. We decline to read the Reinstatement Order so broadly and, like the court in *In re Brown,* 290 B.R. 415, 422 (Bankr.M.D.Fla.2003), we do not "find any reason to deviate from the well-accepted rule that orders are effective when written and docketed." *See also Beatty,* 162 B.R. at 857–58 (oral ruling was not effective to convert case, partly because "the rules consistently rely upon the entry of the judgment or order as the effective date for the consequences of the judgment or order").

We also question whether retroactive imposition of the automatic stay as if it had never terminated would be appropriate in these circumstances. A title company or purchaser at a foreclosure sale can verify within a short time after the sale is completed whether a bankruptcy petition was filed before that time, but if reinstatement orders were to retroactively impose the automatic stay there would be no way to protect against the sale being rendered retroactively void at some future date. *See In re Lashley,* 825 F.2d 362, 364 (11th Cir.1987) ("While the Bankruptcy Code grants the bankruptcy court the power to retroactively *grant relief* from a stay, ... this court is unaware of any authority that grants the bankruptcy court power to retroactively *impose* a stay." (citations omitted, emphasis in original)); *In re Hill,* 305 B.R. 100, 106 (Bankr.M.D.Fla.2003) (discussing cases). *But see In re Diviney,* 225 B.R. 762, 770–71 (10th Cir. BAP 1998) (stating in dicta that the "expected result" of vacating order should be to vacate all its effects and reinstatement was effective as of date when order was signed); *Hakim,* 244 B.R. at 822 (citing "orderly administration of the case" and control over creditor conduct as reasons for vacating order of dismissal and restoring stay as if it had never been terminated).

■ Alternatively, if we assume for the sake of argument that the Reinstatement Order purported to reimpose the automatic stay retroactively, and that the bankruptcy court had the power to do so, the bankruptcy court still had discretion to reconsider that order. The Foreclosure Validation Order leaves no doubt as to the bankruptcy court's ultimate conclusion. The case was reinstated and the stay was reimposed when the Reinstatement Order was entered, not when it was signed. An act that violates the automatic stay is void but that is cured by retroactive annulment of the stay. *Aheong,* 276 B.R. 233.

Just as we reject Debtors' arguments that the bankruptcy court lacked discretion to choose a time other than when it signed the Reinstatement Order to reimpose the automatic stay, we also reject Purchasers' arguments that the only acceptable time was when that order was entered. Purchasers cite our opinion in *Beatty,* in which we reversed the bankruptcy court and held that its oral ruling on a motion to convert was not effective until it was reduced to writing and docket-

ed, at least "for purposes of determining whether a debtor retains his or her right to dismiss a Chapter 13 case" under Section 1307(b). *Beatty*, 162 B.R. at 857–58. That case is distinguishable, not only because of the important policies behind Section 1307(b), but also because it involved an oral order and we specifically noted, "We need not address whether, under *San Joaquin Roast Beef* [7 F.3d 1413], the signing date and/or the filing date of the order would control over the subsequent date of entry on the docket as the effective date of conversion . . . ." *Beatty*, 162 B.R. at 857 n. 10.

For these reasons we hold that the bankruptcy court was not required to reinstate the case and reimpose the automatic stay at either of the times argued by the parties. It had discretion at least to choose between those times: when it signed the Reinstatement Order or when that order was docketed.

## B. *The Bankruptcy Court Did Not Abuse its Discretion*

■ The bankruptcy court was concerned that Purchasers and Lender had "no notice or knowledge" of the Reinstatement Order and had "no ability to ascertain the existence" of that order when the foreclosure sale was completed because the order had not yet been entered on the docket. This is a valid concern. So far as Lender knew, it was free to proceed with foreclosure pending the hearing that had been set on Debtors' motion to reinstate their case. Neither Lender nor Purchasers had notice that Debtors sought retroactive application of the automatic stay to render any completed foreclosure sale void.

Debtors argue that other parties could have discovered when the order was signed, as their own counsel did. It would have been far easier for Debtors' counsel to have notified Lender. *See Brown*, 290 B.R. at 422 ("A telephone call would have put the [creditor] on actual notice of the reinstated case."). Debtors' proposal would also burden the court with inquiries about when an order is signed and could even put the judge in the awkward position of being a percipient witness, perhaps the only witness, as to the time of signing.

These are ample reasons for the bankruptcy court to rule as it did. Debtors' arguments to the contrary are not convincing.

■ Debtors argue that the bankruptcy court placed too much reliance on Rule 9021 and Fed.R.Civ.P. 58, commonly known as the separate judgment rule. It is true that "Rule 58 was intended primarily to clear up uncertainties" as to the time for appeal, and this was one reason why the oral order in *Noli* was not invalid despite the absence of a separate written order (*Noli*, 860 F.2d at 1525), but there was more. The Ninth Circuit observed that the debtors in *Noli* "were present when the oral order was issued and clearly had notice of its existence and content," they "understood and accepted the order as final for purposes of appeal," and immediate relief from the automatic stay was appropriate because they had used bankruptcy as the latest in a series of tactics to evade liability on the eve of trial. *Id.* at 1525–26. It is hardly surprising that an oral order granting immediate relief from the automatic stay was valid in these circumstances, but the issues in this case are entirely different and in general orders are effective when reduced to writing and docketed. *See Brown*, 290 B.R. at 419 and 422 (noting "well-accepted rule that orders are effective when written and docketed" even though oral rulings can be "immediately effective" in emergency situations).

**182**

Nor are we persuaded by Debtors' analogy to *San Joaquin Roast Beef*, 7 F.3d 1413. In that case the Ninth Circuit established a uniform rule that the two year statute of limitations in Section 546(a)(1) runs from when the order appointing a trustee is signed, not when it is entered. The Ninth Circuit was concerned that "bankruptcy trustees should act to protect the estate immediately upon appointment and should not wait for entry of an order." *Id.* at 1417. Debtors advance no similarly compelling policy that the automatic stay must be effective when a reinstatement order is signed, rather than when it is entered. The Ninth Circuit also relied on the "ample notice" provided by the order in that case (*id.* at 1416), which was entered two days after it was signed and started a two year limitations period. The Ninth Circuit contrasted the "relatively short time that a party has to appeal a final order" (*id.* at 1417) and even that short time is more notice than Lender and Purchasers had in this case.

For the above reasons, the bankruptcy court did not abuse its discretion. Debtors' case was reinstated and the automatic stay was reimposed as of the time the Reinstatement Order was docketed, not when it was signed.

## V. CONCLUSION

The bankruptcy court had discretion to determine when Debtors' case was reinstated and the automatic stay was reimposed. It did not abuse that discretion. The Foreclosure Validation Order is AFFIRMED.