**IN RE Anthony Meran BALL, Debtor**

**Anthony Meran Ball, Plaintiff**

v.

**United Cumberland Bank, Defendant**

**CASE NO. 16–60245**
**ADV. NO. 17–6026**

United States Bankruptcy Court,
E.D. Kentucky,
London Division.

Signed 07/17/2017

Richard G. Kenniston, Law Offices of Richard Kenniston, Irvine, KY, for Plaintiff.

R. Aaron Hostettler, Hamm Milby & Ridings, London, KY, for Defendant.

## MEMORANDUM OPINION

Gregory R. Schaaf, Bankruptcy Judge

This matter is before the Court on the Defendant United Cumberland Bank's Motion to Dismiss for Failure to State a Claim [ECF No. 19], the Plaintiff Debtor Anthony Ball's Response [ECF No. 22] and the Bank's Reply [ECF No. 23.] The Court held a hearing on June 28, 2017, and took the matter under submission. For the reasons stated more fully below, the Motion to Dismiss is granted.

## I. Facts.

### A. The Chapter 13 Bankruptcy.

Ball filed for chapter 13 relief on March 7, 2016. [Main Case No. 16–60245, ECF No. 1.] Ball listed three claims due to the Bank on Schedule D: (1) $77,035.00 secured by his residence; (2) $52,676.00 also secured by his residence; and (3) $12,826.00 secured by two vehicles. [Id. at ECF No. 17.]

On April 28, 2016, the Bank filed three proofs of claim: (1) Proof of Claim No. 2 for $51,442.71 secured by a mortgage lien on Ball's mobile home and land; (2) Proof of Claim No. 3 for $9,831.90 secured by a lien on a 2009 Nissan Sentra, Polaris 4–wheeler, and a 2010 Polaris Ranger ATV; and (3) Proof of Claim No. 4 for $70,946.23 also secured by a mortgage lien on Ball's mobile home and land.

Ball's bankruptcy case has not proceeded smoothly. Examples of some of the problems are described in the Order entered December 21, 2017, which directed Ball's counsel to pay more attention, among other things. [Main Case No. 16–60245, ECF No. 137.] The problems continued through and after confirmation, which will likely result in additional action by the Court related to Ball's counsel's performance in this case.

The problems began with the application to pay filing fees in installments tendered on the first day. [Id. at ECF No. 2.] The application was denied because it proposed to tender the final installment more than 120 days after the petition date in violation of a local rule. [Id. at ECF No 8 (KYEB LBR 1006–1).] An amended application was granted on March 11, 2016. [Main Case No. 16–60245, ECF Nos. 9 and 14.]

Unfortunately, the first installment was not paid, so the case was dismissed on June 1, 2016. [Id. at ECF No. 32.] The dismissal was set aside on June 24, 2016, after the fee was paid. [Id. at ECF No. 48.]

The case then slogged along until it was again dismissed on November 8, 2016. [Id. at ECF No. 110.] The basis for the dismissal this time was the failure of counsel to comply with federal and local bankruptcy rules. [See id. at ECF No. 102 (FED. R. BANKR. P. 1008; KYEB LBR 1009–1).] The dismissal was set aside for the second time on November 28, 2016, after Ball's counsel resolved the deficiency. [Id. at ECF No. 120.]

On January 4, 2017, Ball filed a Motion for Avoidance of Preferential Transfer of Debtor's Property and Turnover of Preferentially Transferred Property Held by Bank. [Id. at ECF No. 140.] In November 2016, the Bank offset $10,946.91 against Ball's obligations while his bankruptcy case was dismissed (hereinafter the "Funds"). Ball sought to avoid "an involuntary preferential transfer of Ball prior to the petition date" because the Funds came from Social Security payments. [Id.] The Bank objected because Ball was not in bankruptcy when the offset occurred. [Id. at ECF No. 155.] An adversary proceeding is required for a request to recover money so Ball's Motion was denied on January 18, 2017. [Id. at ECF No. 156; see also FED R. BANKR. P. 7001.]

## B. The Adversary Proceeding and the Bank's First Motion to Dismiss.

On March 20, 2017, Ball filed this adversary proceeding to recover the Funds from the Bank. [ECF No. 1.] Ball amended the Complaint on March 23, 2017, to add language that states he consents to entry of final order or judgment by this Court. [ECF No. 5 (the "Initial Complaint").] The Initial Complaint makes only the following allegations before the prayer for relief:

1. On March 7, 2015, the Plaintiff/Debtor commenced a voluntary case under Chapter 13 of the Bankruptcy Code, by filing a petition which has been assigned No. 16–60245 by the Court.

2. The Court has jurisdiction to hear this matter under 28 U.S.C. § 1334, because it arising in that case and is related to it. This proceeding is a core proceeding.

3. The Defendant was named in Schedule D of the petition as a secured creditor.

4. The Defendant is also a creditor with the meaning of KRS § 367.170.

5. On or about December, 2016 Defendant notified Debtor by four offset notices that they were offsetting Debtor's checking account in the total amount of $10, 491.96.

6. Debtors filed a Voluntary Petition on March 7, 2016.

7. In October, 2016 Debtor received a Social Security backpay amount which was deposited into their account in October, 2016.

8. The funds offset are exempt under the Social Security Act under Section 207.

[Id.] Ball concluded the Initial Complaint by asking the Court to: (1) order the Bank to return the Funds; (2) declare the Bank knowingly violated "the rights of the Debtor" by "offsetting funds known to be exempt under federal and state law;" (3) award compensatory and punitive damages plus attorney fees and costs pursuant to K.R.S. § 367.170; and (4) grant any additional relief that would be necessary or proper. [Id.]

The Bank moved to dismiss the Initial Complaint because it was "unintelligible" and failed to state a claim upon which relief may be granted. [ECF No. 7.] The Bank again argued that nothing prevented it from offsetting the Funds in Ball's account against his debts while the bankruptcy case was dismissed. The Bank further highlighted a series of problems with the Initial Complaint, including:

- Ball alleged the Bank was a creditor within the meaning of K.R.S. § 367.170 (commonly referred to as the Kentucky Consumer Protection Act), but Ball did not assert a cause of action under that statutory provision.

- Section 207 of the Social Security Act does not exist and even if it did, Ball did not plead a cause of action based on the Act.

- Ball alleged the Funds were exempt, but had not claimed an exemption in the Funds on Schedule C.

[Id.] The Bank concluded by arguing that Ball had failed to assert any viable cause of action. [Id.]

Ball filed a response arguing the Funds are exempt from offset pursuant to 42 U.S.C. § 407(a)[1] and relevant case law.

---

1. 42 U.S.C. § 407 provides that "the right of any person to any future payment under this subchapter shall not be transferrable or assignable at law or in equity, and none of the monies paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process or to the operation of any bankruptcy or insolvency law."

[ECF No. 8.] Ball further clarified that § 207 was passed in 1983 and is currently codified as 42 U.S.C. § 407. [*Id.*] The Bank replied that the case law cited by Ball is superseded by subsequent law. [ECF No. 9.]

A hearing was held on April 19, 2017. The problems with the Initial Complaint were discussed and Ball's counsel said he only intended to seek relief based on 42 U.S.C. § 407. The Court granted the Bank's motion, but gave Ball 14 days to amend. [ECF No. 14.] The audio file confirms the Court informed Ball's counsel that he needed to ensure that he stated a claim in the amended complaint because he would not get another chance. [ECF No. 11.] The Court specifically recognized Ball's counsel had a history of problems and the Initial Complaint was another example because much of it was nonsensical. [*Id.*]

### C. The Amended Complaint and the Bank's Second Motion to Dismiss.

Ball timely filed an amended complaint on May 4, 2017, and later amended it a third time on May 10, 2017. [ECF Nos. 15 and 17 (the "Amended Complaint").] This time, Ball alleged the Court's jurisdictional basis and identified the parties before further alleging the following facts:

9. That sometime in 2015, subsequent to the Debtor's filing of his Ch. 13 bankruptcy Petition, Debtor received a large lump sum payment from the Social Security Administration as part of their determination that Debtor was qualified for Social Security Disability benefits.

10. That said lump sum was direct deposited into Debtor's bank account at Defendant bank in October, 2015.

11. That in December, 2015 Debtor received four notices form Defendant informing him that a total of $10,491.96 had been attached and/or set off from his account to pay for four other debts unrelated to Debtor's account. 100% of the fund attached from Debtor's bank account were from either the Social Security lump sum payment or from the monthly Social Security payment to debtor in November and December, 2015.

12. 42 U.S.C. § 407 states that Social Security funds shall not "be subject to execution, levy, attachment, garnishment or other legal process . . ."

[ECF No. 17 at ¶¶ 9–12.]

Count One, the only count in the Amended Complaint, is titled: "Turnover and Recovery of Social Security benefits pursuant to 11 U.S.C. § 542 and 11 U.S.C. § 105 of the Bankruptcy Code." [*Id.* at p. 2 (the heading is left as drafted because the inconsistent capital letter usage, lack of a section symbols and spacing problems emphasize the haphazard drafting).] The three allegations in Count One follow:

13. Debtor repeats, re-alleges, and incorporates as though fully set forth herein paragraphs 1 through 12.

That subsequent to the filing of the Petition, Defendant set off and/or attached $10,491.96 from the bank account of Debtor. The bank account held Social Security funds and were exempt pursuant to 11 U.S.C. § 522.

14. Pursuant to 11 U.S.C. § 542 and 11 U.S.C. § 105, that amount may be recovered from Defendant.

15. That Plaintiff/Debtor consents to any entry of final order or judgment from the Bankruptcy Court.

[*Id.* at ¶¶ 13–15 (again, the grammar and formatting is left as submitted to show the lack of attention to detail).]

Ball's prayer for relief requested turnover of the Funds pursuant to "11 U.S.C. § 542 and 11 U.S.C. § 105." [*Id.* at p. 3.] He did not repeat § 522, despite including that statute as part of his allegations in Count One. While this is not, by itself, fatal, it reinforces the careless drafting of the Amended Complaint.

The Bank now seeks dismissal of the Amended Complaint for failure to state a claim upon which relief can be granted. [ECF No. 19.] The Bank first recognizes the factual allegations are inaccurate because the events occurred in 2016, not 2015 as alleged. [*Id.* (yet another example of careless drafting).] Also, the Amended Complaint does not acknowledge the offset occurred when the case was dismissed. [*Id.*] The Bank's primary argument is that the statutes cited, § 522, § 542, and § 105, do not provide any substantive cause of action and, regardless, current case law would not support Ball's contention that the setoff was improper under 42 U.S.C. § 407. [*Id.*]

Following briefing and a hearing, the matter was taken under submission and is now ripe for a decision.

## II. Jurisdiction.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1409.

## III. Discussion.

### A. Fed. R. Bankr. P. 7012.

The Bank seeks dismissal of the Amended Complaint because it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b).[2]

Civil Rule 8(a)(2), made applicable in adversary proceedings pursuant to Bankruptcy Rule 7008(a), requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In analyzing the pleading requirement of Civil Rule 8(a)(2) in connection with a Civil Rule 12(b)(6) motion to dismiss, the Supreme Court has stated, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955).

In defining the "plausibility" standard, the Supreme Court stated,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> . . . .
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings

---

**2.** Hereinafter references to the Federal Rules of Civil Procedure will appear as "Civil Rule ___" and reference to the Federal Rules of Bankruptcy Procedure will appear as "Bankruptcy Rule ___."

that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 678–79, 129 S.Ct. 1937 (citations omitted) (internal quotations marks omitted).

"If it appears beyond doubt that the plaintiff's complaint does not state facts sufficient to 'state a claim that is plausible on its face,' then the claim must be dismissed." *Preferred Auto. Sales, Inc. v. DCFS USA, LLC*, 625 F.Supp.2d 459, 462 (E.D. Ky. 2009) (citations omitted). "[D]ismissal with prejudice and without leave to amend is . . . appropriate [if] it is clear on de novo review. that the complaint could not be saved by amendment." *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

## B. Ball Fails to State a Claim Upon Which Relief Can Be Granted.

█ The facts are simple and undisputed. The Bank offset the Funds in November 2016 when Ball's bankruptcy case was dismissed. Upon dismissal, the protections of the automatic stay ended, the bankruptcy estate was terminated, and the Funds re-vested in Ball. *See* 11 U.S.C. § 349(b)(3) and § 362(c)(2)(B); *Lomagno v. Salomon Brothers Realty Corp. (In re Lomagno)*, 320 B.R. 473 (1st Cir. BAP 2005); *In re Hill*, 305 B.R. 100, 104–105 (Bankr. M.D. Fla. 2003). The Bank could then exercise its state law contractual rights to setoff the Funds without fear of violating the Bankruptcy Code. The Notes [3] executed by Ball and the Bank memorialize the Bank's right of setoff:

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender [whether checking, savings, or some other account]. This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums on the indebtedness against any and all such accounts and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

[*See, e.g.*, ECF No. 19, at Exh. 1.]

█ Contractual rights of setoff are enforceable under Kentucky law against the parties to the agreements. *See Morganfield Nat. Bank v. Damien Elder & Sons*, 836 S.W.2d 893 (Ky. 1992). Further, the reinstatement of Ball's case did not retroactively reinstate the stay, invalidate the Bank's action, or otherwise restore the bankruptcy estate to its pre-dismissal condition. *In re Lomango*, 320 B.R. at 478–79; *In re Hill*, 305 B.R. at 109–110.

█ The Funds rightfully belong to the Bank as a result of the setoff and are no longer property of the estate. *See In re Quade*, 482 B.R. 217, 229 (Bankr. N.D. Ill. 2012) (setoff effectuates a transfer that

---

**3.** A court may take judicial notice of matters of public record and consider documents referred to in a complaint and central to a claim, as well as documents attached to the motion to dismiss, in deciding whether to dismiss pursuant to Civil Rule 12(b)(6). *Shirk v. JPMorgan Chase Bank, N.A. (In re Shirk)*, 437 B.R. 592, 596 n.1 (Bankr. S.D. Ohio 2010).

prevents the subject property from becoming property of the estate); *Barber v. Princeville State Bank (In re Ostrom–Martin, Inc.)*, 161 B.R. 800, 806 (Bankr. C.D. Ill. 1993) (setoff funds are not property of the estate). Therefore, Ball must assert a cause of action that would bring the assets back into the estate. The Amended Complaint seeks relief pursuant to § 522, § 542, and/or § 105, which do not provide the required relief.

Section 522 describes property exemptions that debtors may claim. But § 522 only applies to property of the estate. 11 U.S.C. § 522(b)(1) ("Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate...."). The Funds are no longer part of the estate as a result of the setoff. Further, Ball has not even claimed the Funds as exempt on Schedule C in the main case. Section 522 does not support the relief sought.

Section 542 also does not help. Section 542(a) provides:

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

Based on the plain language of the statute, Ball may only seek turnover of property the trustee "may use sell or lease under section 363" or property "the debtor may exempt under section 522." *Id.* Ball cannot seek turnover of the Funds because they are not the type of property that the Trustee may use, sell or lease under § 363. *See* 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell,

or lease, other than in the ordinary course of business, *property of the estate...*") (emphasis added). Ball also cannot seek turnover of the Funds because he cannot exempt them pursuant to § 522. Therefore, § 542 does not provide Ball a basis for relief.

This leaves the Court's equitable powers under § 105 as Ball's only remaining theory for relief. Section 105 allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of title." 11 U.S.C. § 105. Although the language of § 105 appears broad, the Court's equitable power under § 105 is narrow. *Law v. Siegel*, —— U.S. ——, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) (a court cannot use § 105 to contravene express conditions of the Code). Ball does not explain how § 105 gives the Court authority to order the Bank to return the Funds. Further, even if the Court could exercise its equitable power in this way, the equities are not on Ball's side. *See* Section I.A *supra*; *see also* Section I.B *supra* (Ball's counsel was warned that he would not have another opportunity to amend). Section 105 does not provide Ball the relief he seeks.

Ball has failed to allege a cause of action under § 522, § 542, or § 105. Therefore his Amended Complaint is dismissed.

**C. Ball is Not Entitled to Amend.**

Ball was told he would not get another chance to amend when the Initial Complaint was dismissed and he was allowed time to fix the deficiencies. Also, Ball did not ask for leave to amend, so that should end the matter. But because leave to amend is freely given "when justice so requires," a few additional comments are warranted to show justice weighs against a further opportunity to amend. FED. R. CIV. P. 15(a)(2) (incorporated by FED. R. BANKR. P. 7015); *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)

(citations omitted) (a court has discretion to allow amendment, subject to the liberal policies of permitting amendments to ensure a determination of claims on the merits).

■ Courts may consider "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment" when deciding whether to permit additional amendments. *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973). The Bankruptcy Appellate Panel for this Circuit has discussed when amendment to cure deficiencies should be granted: " 'The relevant issues in our inquiry are (1) whether [the party seeking amendment] had sufficient notice that his amended complaint was deficient, and (2) if so, whether [he] had an adequate opportunity to cure the deficiencies.' " *Lyon v. Rappaport (In re ClassicStar, LLC)*, Case No. 10-8509, 2011 WL 652744, at *5 (6th Cir. BAP Feb. 24, 2011) (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003)).

■ The Initial Complaint and the Amended Complaint were poorly drafted and contained obvious mistakes. *See supra* at Sections I.B and I.C. The Bank's original Motion to Dismiss highlighted these mistakes, which were also discussed in detail at the April 19 hearing. Despite the poor quality of the pleading, the Court gave Ball an opportunity to amend. Ball amended the complaint three times, once before the Court ordered Ball to amend and twice after. He still fails to state a claim upon which relief can be granted. Ball was given adequate notice of the deficiencies and an adequate opportunity to cure them. Allowing another chance to amend is unduly prejudicial to the Bank.

It is also clear any amendment is futile anyway. The prevailing law provides that a contractual setoff is not a judicial or quasi-judicial process that would violate 42 U.S.C. § 407. *See United States Supreme Court in Washington State Dept. of Social and Health Services v. Keffeler*, 537 U.S. 371, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003) (the phrase "other legal process" refers to, at a minimum, formal procedures that involve some form of judicial or quasi-judicial mechanism). The contractual right of setoff was freely given by Ball when he executed the loan documents and exercised by the Bank at a time when there was no bankruptcy proceeding. Therefore, § 407 is not applicable.

Ball cites two cases to avoid this conclusion, neither of which is persuasive. *See Hambrick v. First Security Bank*, 336 F.Supp.2d 890 (E.D. Ark. 2004); *In re Brewer*, Case No. 02-32068, 2002 WL 32917680 (Bankr. S.D. Ill. 2002). *Brewer* was decided prior to *Keffeler*. Further, the court in *Hambrick* does not discuss *Keffeler* and relies on case law decided prior to the Supreme Court decision. Ball has failed to allege any cause of action that can support his attempt to recover the Funds.

## IV. Conclusion.

Ball has not stated a claim that is plausible on its face despite multiple attempts to do so. Therefore, it is ORDERED the Bank's Motion to Dismiss is GRANTED and the adversary proceeding shall be dismissed with prejudice by separate order.